Good morning. Good morning. Shanti Bryan for Appellant Manuel Lopez. Mr. Lopez struck out and is serving 50 years to life for two statements he made to co-workers at an Epi's restaurant in Sacramento. To one co-worker, a waitress named Kristen, he made these repeated ambiguous statements, you're gonna get it, watch out, what comes around goes around. And her testimony really was the only evidence in support of that first count. That was the basis for the second count of conviction and today I really would like to focus on the the fact that the court severely restricted the cross-examination of we're looking at this through an EDPA lens. So that puts you at a little more, it's a more deferential standard as far as that goes. But it seems to me what you're asking is every person that's ever a victim of a crime that doesn't ask to be or every person that's ever a witness, hey, it'd be great to put them in trial because it's probably pretty hard in this life to go through life and never having gone to see a counselor or having had any The law is pretty, you know, careful in terms of saying, hey, you can't put the victim on trial just because, so they get robbed. Then it comes up that they went to, they had to go to a counselor when they were suicidal because they were getting a divorce. You know, that, it's a great, it'd be great for the defense to do that, but no one would ever, I don't think they wanted to be a quote-unquote victim of a crime, but no one would ever be a witness or anyone if you could put them on trial for something that just happened. So California law is, you know, has protections against being able to bring up everything about a witness or a victim. And then you get it in the AEDPA level, and it seems to me, and then I think then you add the other in terms of, you've got Teresa that also says some pretty damning things against your client. Well, focusing on the first count, which was the statements made to Ward Kristen and the fact that she was not, defense counsel was not able to fully cross-examine her. First of all, her mental health history wasn't minor. There are some cases, yes, ten years prior to the incident, you went to see a psychologist about an isolated incident, that would not be relevant. But in this case, she was having psychological counseling for seven years, up until three months before the incident. She had attempted suicide twice. And because the court did not review the medical records in camera, we don't know exactly what the medical records would have contained. The record shows is an account, her own account of her psychological history, that it was a personality disorder, that it related to self-esteem in relationships. But there were two suicide attempts. And so, part of the problem is that the defense counsel wasn't able to review the medical records to know precisely. But the statute, as I understand it, it's construction under California law essentially requires an objective component as to whether or not a reasonable person hearing all these words in the context in which they are uttered would consider them to be a threat of grave bodily injury or death. And as I understand the California Court of Appeals determination, it ruled that the proposed subject of cross-examination was not sufficiently probative and relevant to that issue that the defendant needed to get into it. This was where the Court of Appeal erred in that it found that the evidence wasn't relevant to her fear. There are two components that the statute requires, an objective element and a subjective element. So first it was... You're not challenging her subjective reaction, are you? In fact, yes. The fact that she changed jobs, had the police there as often as possible. The challenge is even though it's a subjective test, that fear has to be real. That fear can't be a product of paranoia or some kind of mental health issue. That's the objective standard. Well, the objective reasonableness also was affected by the evidence. But to her, the fear had to be real. If you get to the objective component, and objectively on its face, the threat would be reasonable to think somebody would feel seriously threatened. You're saying that even if she subjectively said she was subjectively fearful, that somehow one can drill down into that and say, well, no, you were just paranoid. Even if a reasonable person hearing this, you're super paranoid. Is that the thrust of what you're saying? I'm saying it affected both elements. But, yes, it affected her subjective experience of fear could have been affected by her mental illness. You've focused, I just want to make sure what we're talking about in terms of what we're reacting to, or what she was reacting to. Didn't he also, the prior day, say something to the effect he was going to slit her throat? This was made, that statement was made to Teresa, the manager. So? And it was a It got communicated to her, didn't it? Much later. Much later? She testified that it was three days later, or several days later, I think, was the testimony. She learned of that statement. And that only enhanced her fear that she had already had, based on these ambiguous statements. It suggests that she was subjectively correct. Well, it suggests that Somebody tells you, or you hear, even if it's three days later, that somebody has threatened to slit your throat? I think that that shows that the situation after the statements were made to Teresa escalated by other factors, her complaining to the management again, and it escalated the situation. And that statement was only a statement. The California case law really is based on the fact that an ambiguous statement can become a criminal threat if there are some actions that come later. It says more than that. It says we look at it in context. And I know you want to compartmentalize the case and focus just on the primary victim. But the jury had before it all this evidence of the statements that he made to both victims, and it had the evidence that Judge Fisher referred to a lot. Wasn't there also a rumor in the workplace that your client had murdered someone or had been involved in a prior crime of violence? And that was also known at the time? He, in fact, had told the victims, just as a friend, co-worker conversation, that he had had prior convictions. Well, he said murder, but he actually really was only just a convicted felon of robbery, right? So he upped his own game. I think there's some conflict in the record about what crime he actually told them. Well, but then the jury also heard that he completely denied that he said any of those things. And then he said that he was a nice guy. And then I know this is also part of what your, you know, I'm sure that counsel in court about died when he said he was a nice guy because then they had someone waiting in the wings that got up on rebuttal and said that the defendant had, he'd borrowed $20 and the defendant sent him a note demanding $20, which the defendant believed the co-worker owed and threatened that if he did not pay up, he would be hurt really bad. And so, you know, he kind of put the other nail in the coffin there. I think that Kristen, as this government star witness, her story, her perception and recollection of what occurred was the lens through which the jury understood and viewed all of the evidence. And the fact that defense counsel was not able to point out that that lens had a distortion and that the whole, her whole recollection, her whole perception was distorted. But you're not making- Was the violation of- You're not making the same argument with regard to Teresa, are you? I'm not. I'm focusing, the cross-examination and the violation of the Sixth Amendment was a violation of his right to cross-examine Kristen. And the first count was based on her perception of those ambiguous statements. But you're not challenging the subjective reaction of Teresa and the, well, I guess you are challenging the sufficiency of the evidence to support the objective component of the elements of the crime. Yes. But there was a Sixth Amendment violation here when he was not allowed to cross-examine her. It related to her credibility as well as her subjective and objective understanding of her fear. Is that what we're looking at? Is it a Sixth Amendment violation or is it a due process issue? Because we've got a ruling by the California courts that as a matter of California evidence law, this was appropriate. I think that relates to the fact that the actual mental health records were not reviewed in camera and were not allowed to be admitted into evidence. Well, I was thinking of the statements by the district court of appeal upholding the limitation on cross-examination. Our contention is that's a violation of his right to cross-examine the witness. And that's based on Alford and Davis, and there's many circuit court cases that hold that. But the government star witness, the defense should be able to cross-examine the government star witness on his … Well, they did cross-examine Kristen. So it wasn't, you just didn't get to cross-examine her on any treatment she had gotten for her mental health in the past. So contained within your limited cross-examination is a finding that you're showing wasn't that it was sufficiently relevant to allow it to go into a witness's, you know, mental health issues. In Van Arsdale, the Supreme Court talked about this issue, and it said that although there can be reasonable limits on a cross-examination, when there's a complete exclusion of a topic, it's a violation of the Sixth Amendment to prohibit all inquiry. In that case, it was about an event the State had conceded occurred, some prior molestations, that might reasonably have borne on the witness's reliability or credibility. And that's the same thing that happened here. Although obviously he was allowed to cross-examine Kristen. She was the star witness. The defense counsel was completely forbidden to ask her about her mental health history and their … Well, other problems in her life, as it were. I mean, you would concede, like, for example, if you had wanted to cross-examine on have you ever had an abortion, that wouldn't be relevant. No, it wouldn't. Okay. So, I mean, there's some continuum in terms of when a witness gets on the stand, they have some privacy as to the rest of their life. There's got to be some balancing of the relevance in order to not, because someone happens to be a witness, you don't just get to drag them through everything that's ever happened in their life if it's not, if there's not a nexus of the relevance to their credibility. Right. There has to be proportionality. In this case, because the fear was an element of the crime, her, whatever potential embarrassment, there's no proportional relationship to completely restricting the defense from cross-examining on an element of the crime to protect her potential embarrassment. I'm out of time. Thank you. I'll give you a minute for a rebuttal. Thank you. Good morning, Your Honors. Marcia Fay for Appellee. As this Court recognized, this is an AEDPA case. So as the U.S. Supreme Court recently stated in Harrington v. Richter, the issue is the clearly established holdings of the U.S. Supreme Court and whether the State Court erred in implying those standards. Throughout this case, the appellant has failed to direct us to any U.S. Supreme Court holdings such that would actually compel the conclusions that defendants' constitutional rights were violated. With respect to the ---- Well, if you go so far as to block an area of cross-examination that would basically establish your defense, that's clearly established. There are ---- Davis and Alford addresses that the infringement on cross-examination, if it reaches the level where it prevents a defense from being presented, that can rise to a constitutional violation. What if Kristen was just crazy and she just couldn't tell the difference between the truth and a lie or she was just, you know, I mean, totally paranoid and if someone looked at her sideways, she thought she was being threatened? What if that mental health evidence contained something like that? Wouldn't that be relevant to ---- The issue, as discussed with the Court of Appeal, is that there are two components here and as I noted on page 31 of my brief, the Court of Appeal, quoting the defendant, stated that Kristen was made fearful by defendants' words and actions. What he argued was her subjective reaction was extreme and unreasonable, but that wasn't relevant with respect to her fear, with respect to the elements of Section 422, criminal threats. What was relevant is that she actually was in fear and if she was somebody who was more susceptible to being in fear than somebody else, that wasn't an issue with respect to determining she actually suffered fear. The second element that the jury had to determine is whether that fear was objectionably reasonable. That's the independent objective standard, so her mental health was not an issue when determining that. So her actual fear did need to be determined by the jury. It was determined, it was conceded by the defendant that she was actually in fear, so what was at issue was, was that reasonable? And the jury separately determined that under objective standard where her mental health was not relevant. I think if I understand Ms. Bryan's argument, it is that it goes to, for one of a better term, the reasonableness of her subjective reaction to what Lopez said to her. Well, her subjective reaction had to be actual under the statute. She actually had to have fear, which she did. And then it needed to be reasonable under an objective standard given the circumstances of the case. So you think there is sort of an, I don't know how to phrase this, an objective aspect to the subjective component, is that? Well, there's two components of the sustained fear as recognized by the Court of Appeal. The State Court of Appeal objective and the subjective standard. So if she were, the answer to Judge Callahan's question then is even if she was paranoid and that caused her to see fear or be fearful no matter what, that's enough to satisfy the statute. If it's a threat, sir. You may want to wait until I finish my question, okay? I'm not the moderator, I'm the presiding judge, okay? Or a judge. Oh, judge, yeah. The idea is that the, if she were paranoid, as long as she felt fear for whatever reason, kind of like the eggshell skull victim in Paul's graph, okay? And so then what you do is you check to find out whether or not her fear was reasonable under the objective standard. So it doesn't make any difference whether she was mentally ill to a great degree, as long as she says, I was fearful, then it shifts over to the objective assessment by the jury. Is that what you're saying? I'm saying as long as the jury makes the determination that she sustained actual fear. That could be based on what she said and all the evidence presented in the case. You're begging the question. My question is if her subjective fear was real because she was paranoid. That's the only, normally, everybody else in that area had heard these comments forever. This guy was known for making wild statements. None of them felt fearful, even if they were directed at them. But she did because she's paranoid. So the paranoia is enough to make her fear reasonable. I mean actual. Is that it? I think, one, that isn't the situation here. There was no evidence of any paranoia. But if she actually feels the fear from the threats that defendant did, that satisfies that portion, the subjective element of the criminal threat statute. And coming back to the epidefference here, this is a sufficiency of evidence or with respect to the Confrontation Clause issue, this was not relevant or of marginal relevance. And there is no clear U.S. Supreme Court authority that would require that this evidence have been admitted, and such that no fair-minded jurist could disagree. Well, that doesn't excuse you from not answering the question, but I'll take what you gave us. If there's no further questions, I'll submit. Okay.  First, the fear did have to be actual. It couldn't be the product of her paranoia. Why? Because then it wasn't really fear. So, well, it was fear. If somebody makes a statement that a person, you know, I'm going to slit your throat, okay, and objectively any person hearing that would think if you believe it, it would cause you to be fearful. So she believes it because she's paranoid. Why is it that, and that's not enough under California law, that if I come up and threaten you to slit your throat and put you in fear because of whatever your mental condition is, and you are fearful, you're saying that it's a defense under California laws, even if it's objectively reasonable to feel fear, that you won't be guilty because you picked on somebody who had a mental disease that caused her to overreact? If there's no proof of the subjective and objective elements of the fear, it's not criminal threat. It's an attempt to criminal threat. Okay, but I think the objective checks the subjective part, because let's say I said hi, but because I'm paranoid, hi to me, you know, made me fearful. Well, a person wouldn't be found guilty of a criminal threat there, because on the objective element people would say, well, hi, isn't a, you know, that's, it doesn't meet the objective component. And so even though I was subjectively frightened by the way you said hi to me, it still, you would be found not guilty. Here you have I'll kill you, I'm going to take care of you, I'm going to, you know, I'm going to slit your throat, all of those things. So the objective component, even if she were paranoid in her reading of that, the objective component here is much stronger than if the word was hi. Well, the words were ambiguous. What comes around goes around. And the jury only decided that they also would objectively be fearful of that statement because of Kristen's testimony. Well, but also because of context. The context is undisputed, basically, that she complains about him. Then it puts in place sort of an employment workplace situation where he, they start disciplining him, saying you can't act like that at work, and then he gets into it with Teresa and the whole thing. So there's a contextual setting that has nothing to do with Kristen that I don't think anyone really disputes. I mean, he doesn't dispute that, you know, his contact with these people. He just says he never said anything or he doesn't even say what comes around. He doesn't even say he said any of that, right, because he's a nice guy. His version of the events is that he said what comes around goes around. If you're telling on the boss, I'm going to tell on the boss back. I'm going to get you in trouble in employment context. And, in fact, in this busy diner at these, the manager, Teresa, testified that she had received threats before. There was yelling and screaming and complaining about each other. So in that context, it was unreasonable for Kristen to feel that what comes around, goes around, is a threat on her life. I thought he said you better watch your back. I'm going to get you. You're done for. There were several comments, yes. It wasn't just one isolated comment. Okay. All right. Well, thank you very much. We appreciate the arguments. Case is submitted.
judges: Fisher, Tallman, Callahan